COURT OF APPEALS
DECISION
DATED AND FILED

November 24, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2019AP1517-CR**
**2019AP1518-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2017CF1153
2017CF2283

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ONECIMO B. TOBAR,

DEFENDANT-APPELLANT.

APPEALS from judgments and an order of the circuit court for Milwaukee County: MARK A. SANDERS, Judge. *Affirmed*.

Before Blanchard, Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1  PER CURIAM. Onecimo Tobar appeals from judgments of conviction and an order denying postconviction relief. Following a jury trial, Tobar was convicted of two counts of second-degree sexual assault of a child and one count of child enticement.[1] Tobar argues that the circuit court erred in denying, without holding a hearing, his postconviction motion alleging ineffective assistance of trial counsel.

¶2  Specifically, Tobar contends that the court should have held an evidentiary hearing to determine whether trial counsel was ineffective for failing to object to trial testimony by K.B., the mother of the victim, when she vouched for the honesty of the victim, A.H., and also for failing to object to a prosecution closing argument that allegedly vouched for the honesty of K.B. We reject the argument based on K.B.'s purported vouching on the ground that Tobar fails to show that he was prejudiced by a failure to object. As to the prosecutor's closing, we reject the argument because the allegations in Tobar's postconviction motion are conclusory and fail to allege sufficient facts to show that he is entitled to an evidentiary hearing.

¶3  Tobar further argues that he received ineffective assistance because trial counsel failed to object to the introduction of evidence that Tobar had allegedly hit A.H. and K.B. before the charged offenses, which was inadmissible as "other-acts" evidence under WIS. STAT. § 904.04(1) (2017-18).[2] On this issue,

---

[1] Tobar was also convicted of two counts of felony bail jumping, but this appeal does not involve the bail-jumping charges and we have no reason to discuss them in detail.

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

we conclude that such an objection would have been denied and therefore trial counsel could not have been ineffective for failing to make it. We affirm.

## BACKGROUND

¶4 The State charged Tobar with two counts of second-degree sexual assault of a child younger than sixteen and one count of child enticement. *See* WIS. STAT. §§ 948.02(2), 948.07(1). The charges were based on allegations regarding two sets of incidents in January 2017. The identified victim for all three offenses was A.H., the daughter of Tobar's then girlfriend, K.B. At the time of the incidents, A.H., K.B., and Tobar lived in the same residence.

¶5 The first incident involved the following allegation of sexual assault. Tobar and A.H. were alone watching a movie together when Tobar "rubbed [A.H.]'s vagina over her clothing with his hand" and asked her if it "felt good."

¶6 The second incident involved the following allegations of sexual assault and child enticement. Tobar came into A.H.'s room while she was sleeping, woke her up, and asked her to go with him to his bedroom, which she did. Tobar then allegedly asked A.H. if she wanted to "learn some things," which A.H. did not understand. Tobar then proceeded to kiss A.H. on her lips, breasts, and stomach, then pulled down her pants and performed oral intercourse on her and penetrated her vagina with his fingers. Tobar also grabbed A.H.'s hand and put it on his penis.

¶7 At trial, the jury watched a video recorded interview of A.H. by a forensic interviewer and heard testimony from the interviewer. In addition, A.H. testified in person. K.B. testified at length regarding events underlying the bail-jumping charges. In addition, K.B. testified that she initially had doubts regarding

3

A.H.'s account of the sexual assaults but later came to believe her. A school counselor testified that A.H. reported to the counselor in February 2017 that she had been sexually assaulted. The counselor read to the jury from a statement that he had prepared memorializing what A.H. told the counselor. Tobar did not testify.

¶8 A.H.'s credibility was without doubt the central issue at trial on the charges at issue in this appeal. No witness other than A.H. testified to direct knowledge of the alleged sexual assaults or enticement, and the State presented no physical evidence supporting these charges.

¶9 As part of the State's closing argument, the prosecutor urged the jury to find credible A.H.'s in-person trial testimony and her statements in the recorded interview. The prosecutor further contended that K.B. "was honest" in testifying about her change of opinion regarding whether A.H. was being truthful in her statements that Tobar had sexually assaulted her. Trial counsel did not object to this statement by the prosecutor.

¶10 The defense theory was that A.H. fabricated the allegations of sexual assault. In support of this theory, trial counsel noted some inconsistencies among the following accounts: the recorded forensic interview; what A.H. subsequently reported to police; and A.H.'s in-person trial testimony. Trial counsel further argued that A.H. was motivated to retaliate against K.B., and at the same time against K.B.'s boyfriend Tobar, because K.B. had rules against A.H. dating or even talking to boys. More specifically, counsel contended that A.H. wanted to "get even with her mother" for punishing her for socializing with boys, which A.H. tried to accomplish by "disgrac[ing]" Tobar and "hurting [K.B.] with her boyfriend," Tobar.

¶11 After the jury found Tobar guilty on the sexual assault and child enticement charges, new counsel for Tobar filed a postconviction motion alleging that his trial counsel was ineffective based on three grounds. First, trial counsel failed to object to testimony by K.B. that Tobar argues vouched for A.H.'s credibility at trial and was irrelevant. Second, trial counsel failed to object to the portion of the prosecutor's closing argument that Tobar contends vouched for the honesty of K.B. in bolstering A.H.'s credibility. Third, trial counsel failed to object to the introduction of other-acts evidence by the State, which was offered to show that Tobar struck A.H. and K.B. before the charged sexual assaults. Tobar requested a ***Machner*** hearing. *See **State v. Machner***, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

¶12 The State argued that Tobar's postconviction motion failed to make a sufficient showing that he is entitled to a postconviction hearing on any of the alleged grounds of ineffective assistance.

¶13 The circuit court denied Tobar's motion without a hearing. The court ruled that K.B.'s testimony was not improper vouching because it did not have the purpose or effect of conveying that A.H. testified truthfully at trial. The court concluded that the prosecutor's comments regarding K.B.'s testimony were not improper because they were supported by the evidence and because the jury was instructed not to treat any remarks of counsel as evidence. As for the other-acts evidence, the court concluded that trial counsel was not ineffective for failing to object because that evidence was relevant and proper to rebut the defense theory that A.H. made her statements that Tobar sexually assaulted her only as a way to retaliate against K.B. and Tobar for punishing A.H. for dating a boy. The court made the alternative ruling that the other-acts evidence would also have been admissible under the greater latitude rule. Tobar appeals.

5

**DISCUSSION**

¶14    Tobar argues that the circuit court erred in denying, without a hearing, his postconviction motion alleging three grounds of ineffective assistance of trial counsel.  We provide the pertinent legal standards and then address each of the grounds raised by Tobar in his postconviction motion.

¶15    "Whether a defendant's postconviction motion alleges sufficient facts to entitle the defendant to a hearing for the relief requested is a mixed standard of review."  *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.  We determine de novo whether a postconviction motion "on its face alleges sufficient material facts that, if true, would entitle the defendant to relief."  *Id.*  The movant is not entitled to a hearing if the postconviction motion fails to "raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief."  *See id.*

¶16    To allege facts sufficient to entitle a defendant to postconviction relief based on ineffective assistance of counsel, the defendant "must establish that counsel's performance was deficient and that the deficient performance was prejudicial."  *See State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  "If the defendant fails to satisfy either prong, we need not consider the other."  *Id.*  "The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous."  *Id.*  We determine de novo whether those facts satisfy the prejudice prong.  *Id.*, ¶39.

¶17    To meet the prejudice prong, "the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of

6

the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, ¶39 (citations omitted).

¶18 If trial counsel failed to bring a motion that would have been denied, by definition this cannot have prejudiced Tobar. *See State v. Christopher Joseph Allen*, 2017 WI 7, ¶46, 373 Wis. 2d 98, 890 N.W.2d 245.

## I. VOUCHING BY K.B.

¶19 Tobar contends that, without an objection from trial counsel, pertinent portions of K.B.'s testimony usurped the jury's role in determining witness credibility. We reject this argument because the record conclusively demonstrates that Tobar was not prejudiced by this testimony. There was no prejudice because the failure to object resulted at most in a violation of the so-called "*Haseltine* rule," which was harmless error.

### A. Additional Background

¶20 K.B. gave the following pertinent testimony in response to questions from the prosecutor:

> Q. [Y]ou found out that your daughter had just disclosed that [Tobar] sexually abused her, but you continued to talk to [Tobar]. Help us understand why you did that.
>
> A. Because I wasn't sure if [A.H.] was doing it because she was pissed about getting caught and having everything taken from her.
>
> Q. So is it fair to say you didn't believe her at first?
>
> A. I had my doubts.
>
> Q. You had your doubts? Okay. Help us explain why you had your doubts.

7

A. Because [in] the nine years nothing ha[d] ever happened. She was going through a lot of phases. She got caught talking to a boy. She got into a lot of trouble. We took everything from her.

Q. Is it fair to say you didn't want to believe that it was true?

A. Yeah. I did not want to believe it.

Q. [K.B.], do you believe your daughter now?

A. Yes.

Q. What has changed? Why do you believe her now as opposed to then when you said you had some doubts?

A. She's been going through a lot of things. If it was just a lie she wouldn't have been going through those things.

….

Q. Are you here to support her now?

A. Yes.

The prosecutor later asked K.B. about Tobar allegedly leaving a voicemail on K.B.'s phone, which included the following exchange:

Q. So at this point that [Tobar is] leaving you these messages and pulling up on you in the street, were you still on his side?

A. No.

Q. Why?

A. Because I chose to start believing my daughter, everything that was going on with her.

Trial counsel for Tobar did not object to any of the testimony just quoted.

¶21    Tobar's postconviction motion alleged that the lack of an objection to this testimony prejudiced him in two ways. First, K.B.'s testimony invited the jury "to abdicate [to K.B.] its essential function of determining the credibility of

8

A.H." Second, "the emphasis on the mother-daughter relationship clouded the real controversy, was irrelevant, and tended to inflame the passion of jury."

## B. Legal Standards and Analysis

¶22 Under the so-called "*Haseltine* rule," witnesses are "'not permitted to express an opinion as to whether another physically and mentally competent witness is telling the truth.'" *State v. Maday*, 2017 WI 28, ¶34, 374 Wis. 2d 164, 892 N.W.2d 611 (quoting an earlier Wisconsin Supreme Court case that in turn quotes *State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984)). Under this evidentiary rule, the testimony at issue cannot have the purpose or effect of attesting to a witness's truthfulness. *See State v. Miller*, 2012 WI App 68, ¶¶13-15, 341 Wis. 2d 737, 816 N.W.2d 331 (discussing *State v. Smith*, 170 Wis. 2d 701, 490 N.W.2d 40 (Ct. App. 1992)) (evidence of a detective's assessment of a suspect's truthfulness in the process of an interrogation had neither the purpose nor effect of assessing the suspect's truthfulness as a witness). "Whether a witness has improperly testified as to the credibility of another witness is a question of law that we review independently." *State v. Maloney*, 2004 WI App 141, ¶19, 275 Wis. 2d 557, 685 N.W.2d 620, *aff'd*, 2006 WI 15, 288 Wis. 2d 551, 709 N.W.2d 436.

¶23 Because we reject Tobar's argument based on K.B.'s purported vouching on the ground that Tobar fails to show that he was prejudiced by a failure to object, we need not address whether trial counsel was deficient in failing to object to K.B.'s testimony. We conclude that, even if K.B.'s testimony violated the *Haseltine* rule, Tobar has not shown that he was prejudiced by any assumed violation. We agree with the State that, in the context of the trial, K.B.'s testimony that she believed A.H. did not present "too great a possibility that the

jury abdicated its fact-finding role" regarding A.H.'s credibility. *See **State v. Patterson***, 2010 WI 130, ¶58, 329 Wis. 2d 599, 790 N.W.2d 909 (reversible error results only if testimony about the truthfulness of another witness results in "'too great a possibility that the jury abdicated its fact-finding role' to the witness and did not independently find the defendant's guilt" (quoting ***Haseltine***, 120 Wis. 2d at 96)). We now explain this conclusion further.

¶24    As the State notes, the jury was presented with three separate versions of A.H.'s incriminating account:  her in-person-trial testimony; the recording of her forensic interview; and the school counselor's report.  This generally gave the jury multiple accounts from which to judge A.H.'s credibility.  More specifically, from the defense point of view, this provided an opportunity to cross-examine A.H. and other witnesses in a way that highlighted details in her description of the sexual assaults at trial that the jury could have decided were inconsistent with her earlier-in-time statements to police, the forensic interviewer, and the school counselor.[3]  Next to this evidence, K.B.'s testimony regarding her changed belief regarding A.H.'s account at trial could not reasonably have had meaningful weight in the jury's assessment of A.H.'s credibility.  Further, the testimony in itself was short and simple.  K.B. essentially asserted that, based on the way that A.H. was acting, K.B. came to believe that she was telling the truth.

---

[3] Defense counsel contended in his closing argument that there were several inconsistencies between A.H.'s accounts.  Examples included that A.H. told police that Tobar asked her if she "wanted to learn something new" after A.H. had gone upstairs to sleep in the same bed as Tobar, while at trial A.H. testified that Tobar asked her this question before they went upstairs.  Counsel further argued that what he submitted was A.H.'s calm demeanor during the forensic interview showed that she was lying about her account that Tobar had enticed and sexually assaulted her.

K.B. did not purport to describe the way A.H. was acting; her testimony was presented in a conclusory manner.

¶25    Tobar argues that, because A.H. was the sole witness to allege that Tobar had committed the assaults, and the State lacked corroborating physical evidence, K.B.'s vouching had to be prejudicial because it improperly clouded the central issue of the case, A.H.'s credibility.  As persuasive authority, Tobar cites *Earls v. McCaughtry*, 379 F.3d 489 (7th Cir. 2004), in which the court held that trial counsel provided ineffective assistance by failing to object when the only "non-biased" witness was a social worker who provided "pivotal" testimony to the effect that the victim was telling the truth about the alleged sexual assaults, which included two assaults that allegedly took place in the company of others but for which the State provided no corroborating evidence.  *See id.* at 493-96.  This argument fails to come to grips with at least one dynamic present here, but not present in *Earls*.  Specifically, a jury applying common sense would readily appreciate that, as A.H.'s mother, K.B. could be expected to be biased towards believing her daughter.  This distinguishes *Earls*, because Tobar does not contend that any witness here besides K.B.—such as A.H.'s forensic interviewer or her guidance counselor—provided testimony vouching for A.H.'s allegations based on experience or expertise.

¶26    Finally on this issue, we note that the circuit court instructed the jury as follows:

> It is your duty to scrutinize and weigh the testimony of the witnesses and to determine the effect of the evidence as a whole.  You are the sole judges of the credibility; that is, the believability of the witnesses and the weight to be given to their testimony.

11

We are to presume that the jury followed these instructions. ***State v. Abbott Labs.***, 2012 WI 62, ¶102, 341 Wis. 2d 510, 816 N.W.2d 145. Tobar's conclusory allegation that the jury "was invited to abdicate" its credibility weighing role by K.B.'s testimony fails to overcome the presumption that the jury followed the instruction, given the considerations we have addressed above.

## II.  VOUCHING BY PROSECUTOR

¶27    In arguing that trial counsel was ineffective for failing to object to vouching statements made by the prosecutor in closing argument, Tobar contends that the State failed to present evidence that supported the prosecutor's assertion that K.B. was credible. On this issue, we conclude that the allegations of the postconviction motion are conclusory and fail to sufficiently allege facts showing that Tobar is entitled to a postconviction hearing.

### A.  Additional Background

¶28    The following was part of the prosecutor's closing argument:

> I'm not asking you to like [K.B.]  But I'm asking you to believe her because I think she's telling the truth. I think she's a candid witness.
>
> Again, [it was] extremely difficult for [K.B.] to be here in a room full of strangers, talking about a case where the man that she was with for nine years sexually abused her daughter.
>
> She was honest with you.  She told you she had doubts at the beginning.  When I asked her what the doubts were, you know, she said she wasn't sure, you know, [A.H.] had some problems but she believes her.
>
> ….
>
> I also asked her what made her start believing her daughter.  She testified that once the defendant was in

custody she said, I had time to think on my own without the defendant in her ear telling her, talking to her.

¶29    In addition to instructing the jury regarding its role in weighing credibility, the court told the jury that the "[r]emarks of the attorneys are not evidence" and that if such "remarks suggest certain facts not in evidence," the jury was to "disregard that suggestion."

¶30    Tobar's postconviction motion alleged that "[t]he failure to object and dispel this humbug" (*i.e.*, the prosecutor's purported vouching) "undoubtedly prejudiced Mr. Tobar because it left the impression that the jury could base its verdict on non-existent evidence." However, Tobar's motion failed to take into account in any way the broader context of the prosecutor's comments, including the jury instructions we noted above, and K.B.'s testimony as a whole, which rendered the motion insufficient on its face to show how he could be entitled to relief. *See **State v. Lammers***, 2009 WI App 136, ¶23, 321 Wis. 2d 376, 773 N.W.2d 463 ("improper statements by a prosecutor" "must be looked at in context of the entire trial" to determine if they are sufficient to overturn a criminal conviction). Specifically, Tobar's motion does not address the prosecution's description of the trial evidence generally or the State's trial theory in a way that would show that the isolated portion of the closing argument he points to was not reasonably based on evidence in the record or relevant to a fact at issue. Moreover, Tobar's motion also fails to articulate what relief trial counsel should have sought in making such an objection or indeed what the legal theory of any objection would have been.

¶31    Tobar's postconviction motion cites to ***Jordan v. Hepp***, 831 F.3d 837 (7th Cir. 2016), as persuasive authority to support the notion that the prosecutor urged the jury to believe K.B. without a basis in the record to support

the argument. But rather than support Tobar on this point, *Hepp* actually serves to highlight another way in which his postconviction motion was insufficiently developed. The court in *Hepp* called it "textbook" vouching when a prosecutor urged a jury to find a detective credible because the detective would not risk her career by lying under oath. *Id.* at 847. As the court explained, this argument suggested to the jury that the prosecutor was aware of professional repercussions facing the detective if she was determined to have lied on the stand, even though no such repercussions had been introduced as evidence. *Id.* Tobar's conclusory assertion that there was no evidence to show that K.B. was being truthful fails to explain how the prosecutor led the jury to believe that there existed facts, outside of the record, that formed the basis for the prosecutor's comments regarding K.B.'s truthfulness.

### III. OTHER ACTS

¶32    Tobar argues that his trial counsel was ineffective for failing to object to the introduction of evidence regarding Tobar having allegedly struck A.H. and K.B. before the alleged sexual assaults. We conclude that the record conclusively demonstrates that an objection to the admission of the other-acts evidence would have been denied and therefore Tobar's counsel's performance was not deficient for failing to make the objection.

### A. Additional Background

¶33    In the recorded forensic interview played at trial, A.H. described an incident in which Tobar allegedly struck her in the back of the head three times, months before the alleged sexual assaults. This earlier incident allegedly began when Tobar saw a text on A.H.'s phone indicating that she had been dating a boy. A.H. also stated in the recorded interview that she had witnessed Tobar hit K.B.,

14

most recently when A.H. was seven years old (approximately six or seven years before trial).

¶34 The statement written by A.H.'s school counselor, read to the jury during the counselor's testimony, contained the following:

> I asked [A.H.] if there were any other things that had happened in the past with him. And she stated that in September of 2016 Onecimo saw a message that she had received from a boy talking about dating. She was walking up towards her house and Onecimo punched her in the back of the head three times. She started screaming and then her mom starting yelling at him to stop. Because [A.H.] had seizures in the past her mom told him to stop so she wouldn't get hurt any further. He stated that he should keep beating her up, but he did stop. She said Onecimo had been abusive to mom in the past as well.

¶35 Trial counsel did not object to either the forensic interview recording or the counselor's statement based on these references. Instead, counsel questioned both A.H. and her counselor regarding the allegation that Tobar had struck her. As part of her in-person trial testimony, A.H. testified that Tobar had hit her in the past, but further testified that she did not remember when this had occurred and also did not remember describing the incident during the forensic interview.

¶36 Tobar argued in his postconviction motion, in pertinent part, that the references to Tobar striking A.H. in an incident predating the alleged sexual assaults were inadmissible as other-acts evidence.

## B. Legal Standards and Analysis

¶37 Our supreme court has explained the following regarding the admission of other-acts evidence:

15

> Other-acts evidence is properly admissible (1) if it is offered for a permissible purpose, other than the prohibited propensity purpose, pursuant to WIS. STAT. § 904.04(2)(a), (2) if it is relevant under the two relevancy requirements in WIS. STAT. § 904.01, and (3) if its probative value is not substantially outweighed by the risk or danger of unfair prejudice under WIS. STAT. § 904.03. The party seeking to admit the other-acts evidence bears the burden of establishing that the first two prongs are met by a preponderance of the evidence. Once the proponent of the other-acts evidence establishes the first two prongs of the test, the burden shifts to the party opposing the admission of the other-acts evidence to show that the probative value of the evidence is substantially outweighed by the risk or danger of unfair prejudice.

*State v. Marinez*, 2011 WI 12, ¶19, 331 Wis. 2d 568, 797 N.W.2d 399 (citations and footnote omitted); *see also id.*, ¶¶4, 19 (noting that the court developed this framework, "the *Sullivan* analysis," in *State v. Sullivan*, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998)); *State v. Dorsey*, 2018 WI 10, ¶26-27 & n.20, 379 Wis. 2d 386, 906 N.W.2d 158 (§ 904.04(2)(b)1. allows circuit courts to admit "other, similar acts … with greater latitude under a *Sullivan* analysis" under circumstances listed in the statute including "criminal proceeding[s] alleging a violation of … [WIS. STAT.] ch. 948").[4]

---

[4] WISCONSIN STAT. § 904.04(2)(a) states in pertinent part that

> evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Section 904.04(2)(b)1. provides in pertinent part that:

(continued)

16

¶38 In cases involving charges of second-degree sexual assault of a young child, the "greater latitude rule" applies, which more liberally facilitates the introduction of other-acts evidence. *See* *State v. Gee*, 2019 WI App 31, ¶26, 388 Wis. 2d 68, 931 N.W.2d 287, *review denied*, 2019 WI 98, 389 Wis. 2d 32, 935 N.W.2d 677; *see also* WIS. STAT. § 904.04(2)(b)1. The greater latitude rule applies to each prong of the *Sullivan* analysis, although it does not relieve the proponent from having to identify a proper purpose. *State v. Gutierrez*, 2020 WI 52, ¶29, 391 Wis. 2d 799, 943 N.W.2d 870.

¶39 We agree with the State that, given the applicability of the greater latitude rule here, any objection to the other-acts evidence would have been denied. Thus, trial counsel's failure to object to the introduction of this evidence did not prejudice Tobar.

¶40 Regarding the first *Sullivan* prong, we conclude that the State identifies several permissible purposes for which the other-acts evidence here could have been offered in the event that trial counsel had objected to its admission. One is that evidence about A.H.'s knowledge of earlier incidents in which Tobar allegedly struck A.H. or K.B. could have been offered to, in the State's words, "show that A.H. was living in an environment where she would not have felt safe" reporting the sexual assaults, and this would help explain the delay

> [i]n a criminal proceeding alleging a violation … of ch. 948, … evidence of any similar acts by the accused is admissible, and is admissible without regard to whether the victim of the crime that is the subject of the proceeding is the same as the victim of the similar act.

17

between the alleged assaults in January 2017 and her disclosure to the school counselor on February 17, 2017.[5]

¶41 Seeking to downplay the relevance of this permissible purpose, Tobar characterizes the delay in reporting as "not substantial." However, even assuming that the delay in reporting was not part of the defense theory, the State was still entitled to seek to bolster A.H.'s credibility against an inference of untruthfulness based on her waiting as long as she did to report the assaults. To this same end, the State elicited testimony from the forensic interviewer that it is common for children to wait to report sexual abuse, testimony which the State then noted in its closing argument. Tobar fails to support the notion that, merely because the defense did not end up specifically attacking A.H.'s credibility based on the delay in reporting, the State could not seek to present other-acts evidence in an attempt to neutralize the delay topic. His argument is not supported by any citation to legal authority and is not developed. Thus, we decline to further consider the argument. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

---

[5] It is sufficient for the State to identify one permissible purpose for which the other-acts evidence was offered and accepted to defeat Tobar's other-acts-based ineffective assistance argument regarding the first prong of the Sullivan analysis. *See State v. Marinez*, 2011 WI 12, ¶25, 331 Wis. 2d 568, 797 N.W.2d 399 ("The proponent need only identify a relevant proposition that does not depend upon the forbidden inference of character as circumstantial evidence of conduct." (citation omitted)); *see also State v. Dorsey*, 2018 WI 10, ¶42, 379 Wis. 2d 386, 906 N.W.2d 158. But we note that the State identifies at least one other purpose that Tobar fails to meaningfully address in his reply brief, namely, that the other-acts evidence gave the jury contextual evidence regarding the family's "power dynamic," tending to show that Tobar felt he had the opportunity to "get away with" sexually assaulting A.H. given his willingness to abuse her in other ways, apparently free from serious consequence. *See* WIS. STAT. § 904.04(2)(a) (including "proof of … opportunity" among examples of purposes for which other-acts evidence may be admitted).

¶42 Moreover, Tobar's postconviction motion—the focus of our review—fails to meaningfully address potential permissible purposes having apparent relevance to the parties' trial theories. The postconviction motion merely states in conclusory fashion that the other-acts evidence was not offered for permissible purpose listed in WIS. STAT. § 904.04(2)(a). *See Dorsey*, 379 Wis. 2d 386, ¶42 (citing *Marinez*, 331 Wis. 2d 568, ¶29) ("permissible purposes under *Sullivan* are not limited to those listed in the statute or to those recognized in previous cases").

¶43 Regarding the second *Sullivan* prong, Tobar's motion makes the blanket allegation that the other-acts evidence at issue here was irrelevant, bearing "little, if any, relation to the facts and propositions of consequence in this case." But this again fails to come to grips with the permissible purposes for which the State could have sought admission of the other-acts evidence and further fails to account how those purposes were relevant at trial. *See Marinez*, 331 Wis. 2d 568, ¶25 ("Identifying proper purposes for the admission of other-acts evidence is largely meant to develop the framework for the relevancy determination."). Evidence regarding A.H.'s reasons for delay in alleging that Tobar sexually assaulted her are relevant to her credibility, the critical issue at trial. *See Gutierrez*, 391 Wis. 2d 799, ¶33 ("A witness's credibility is always 'consequential' within the meaning of [Wisconsin's relevancy statute,] WIS. STAT. § 904.01." (citation omitted)).

¶44 Moving to the third prong, we conclude that under the circumstances here Tobar's counsel would not have been able to show that the prejudice caused by references to earlier instances of Tobar striking A.H. and K.B. "substantially outweighed" the probative value of that other-acts evidence. It is certainly true that the references to Tobar having hit A.H. and K.B. risked putting his character

19

in a bad light. However, we agree with the State that this prejudicial effect is mitigated by the fact that the severity of the other-acts evidence at issue here was low relative to the sexual assault charges that were the primary focus of trial. Further, the greater latitude rule as applied to the third *Sullivan* prong may under some circumstances allow for the admission of relatively inflammatory other-acts evidence. *See Marinez*, 331 Wis. 2d 568, ¶¶42-44, 46. As for the probative value, as we have explained, evidence of A.H.'s awareness of Tobar striking A.H. and K.B. provided the jury with a concrete example of alleged physical abuse that could have caused A.H. to fear immediately reporting the sexual assaults. *See id.*, ¶41 ("probative value of evidence 'is a function of its relevance'" to a proper purpose (citation omitted)).

¶45 Tobar argues that the other-acts evidence here lacked similarity to the charged offense, which, when present, can make a stronger case for admitting other-acts evidence. *See State v. Hurley*, 2015 WI 35, ¶79, 361 Wis. 2d 529, 861 N.W.2d 174 (similarity between charged offense and other act is the "measure of probative value"; "[s]imilarity is demonstrated by showing the 'nearness of time, place, and circumstance' between the other-act and the charged crime" (citations omitted)). As to the alleged hitting of A.H., this incident was not far removed in time from the charged offenses,[6] was described in reasonably detailed and consistent accounts in the school counselor's report and in A.H.'s recorded interview, and involved Tobar abusing A.H., albeit in a non-sexual manner. The probative value of the reference to Tobar hitting K.B. is undoubtedly weaker, because this allegation was alluded to only in the recorded interview and occurred

---

[6] The school counselor's report states that A.H. said that the incident took place in September 2016, approximately four months before the alleged sexual assaults.

further in the past. However, this vaguer and older allegation was also relevant to the charged offenses in that, if credited, it served the same purpose as the allegation that Tobar hit A.H., namely, as a basis for the jury to find that A.H. feared that Tobar might use physical violence in reprisal for her reporting the alleged sexual assaults. *See id.*, ¶80 ("[E]vents that are dissimilar or that do not occur near in time may still be relevant to one another.").

¶46    Tobar argues that it is significant that neither instance of alleged hitting is "undisputed," by which he apparently means there was no evidence that Tobar admitted to either incident or was convicted of a criminal offense to either incident. Further, Tobar notes that he was not in fact charged or convicted based on either incident, in contrast to the situation in *Marinez*. *See Martinez*, 331 Wis. 2d 568, ¶1. However, he fails to develop an argument that trial counsel could have prevailed on a motion to exclude the evidence based on the lack of sufficient evidence. We need not address undeveloped arguments. *See Pettit,* 171 Wis. 2d at 646-47.

¶47    Further, this other-acts evidence had some apparent value to the defense's trial theory, which further undermines any potential prejudice argument. The other-acts evidence provided the jury with a concrete example of Tobar punishing A.H. for pursuing an interest in dating, which could have directly supported the defense theory regarding A.H.'s alleged motive to falsely accuse Tobar as a way to retaliate against K.B. for enforcing rules against A.H. dating.[7]

---

[7] Tobar argues that, when the prejudicial effect of the other-acts evidence is viewed in conjunction with what he contends was K.B.'s and the prosecutor's improper vouching, the outcome of trial "becomes even more suspect" based on a cumulative effect. *See State v. Thiel*, 2003 WI 111, ¶¶58, 63, 81, 264 Wis. 2d 571, 665 N.W.2d 305 (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)) (cumulative effect of trial counsel's errors may undermine confidence

(continued)

21

## CONCLUSION

¶48  For all of these reasons, we conclude that the circuit court properly denied Tobar's postconviction motion without a hearing.

*By the Court*.—Judgments and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

in the outcome of trial).  There is no starting point for this argument in light of our conclusions that the purported vouching and other-acts evidence did not unfairly prejudice Tobar.